UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHIM MEAK,                    )<br>                                              )<br>            *Plaintiff*         )<br>                                              )<br>v.                                        )<br>                                              )<br>MICHAEL J. ASTRUE,    )<br>**Commissioner of Social Security,**   )<br>                                              )<br>            *Defendant*       ) | *Civil No. 08-102-P-H* |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability from capsulitis, arthritis, and ligament disruption of the right ankle, was capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had a severe impairment of right ankle pain, Finding 3, Record at 16; that he retained the residual functional capacity

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

("RFC") to lift and carry up to 20 pounds occasionally and up to 10 pounds more frequently, stand and walk up to two hours, and sit up to six hours in an average, eight-hour workday with normal breaks, although he needed to avoid workplace hazards such as uneven walking surfaces that might aggravate his ankle pain, Finding 5, *id.* at 19; that, considering his age ("younger individual" age 18-44), education (at least high school, with ability to communicate in English), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 22;[2] and that he therefore had not been under a disability from December 23, 2002, through the date of decision (October 24, 2007), Finding 11, *id.*[3]  The Appeals Council declined to review the decision, *id.* at 2-6, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5

---

[2] With respect to Finding 10, the administrative law judge observed in the text of his decision that if the plaintiff had the RFC to perform the full range of sedentary work, considering his age, education, and work experience, Rules 201.28 and 201.29 of Table 1, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), would direct a finding of "not disabled."  *See* Record at 22.  He stated that, while the plaintiff had an additional nonexertional limitation in the form of his need to avoid hazards such as uneven surfaces, that limitation had little or no effect on the occupational base of unskilled sedentary work, a proposition for which he cited Social Security Ruling 83-14 ("SSR 83-14").  *See id.*
[3] The plaintiff is insured for purposes of SSD through December 31, 2008.  *See* Finding 1, Record at 16.

(1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff contends that the administrative law judge improperly rejected an RFC opinion of treating source Michele N. Kurlanski, D.P.M, and erroneously used the Grid as a framework for decision-making without substantiating his finding that a need to avoid hazards such as uneven walking surfaces has little or no effect on the occupational base of unskilled, sedentary work.  *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (Docket No. 6) at 2-8.[4]  Both points are meritorious and necessitate reversal and remand.

## I.  Discussion

### A.  Treatment of Treating Source

The plaintiff first argues that the administrative law judge fundamentally misunderstood Dr. Kurlanski's RFC opinion, as a result of which he rejected it for unsupportable reasons.  *See id*. at 2-7.  I agree.

The plaintiff sustained an ankle injury on the job at a food-processing company in 1997, when a co-worker driving past him in a motorized pallet jack ran into a pallet lifter, causing it to strike him in the right ankle.  *See* Record at 344.  The plaintiff received three weeks of physical therapy for a ligament pull and was able to return to his job and continue working until his injury was aggravated in September 2002.  *See id*. at 344-45.  As the administrative law judge noted, the plaintiff sought care over the next few years for severe right foot/ankle pain from a number

---

[4] The plaintiff erroneously referred to Dr. Kurlanski as Michele M. Kurlanski.  *Compare* Statement of Errors at 2 *with* Record at 332.

of providers and underwent a variety of treatments, including surgery, medication trials at a pain clinic, acupuncture, and lidocaine nerve blocks. *See id*. at 16-18.

On November 17, 2006, the plaintiff first sought treatment from Dr. Kurlanski, to whom he had been referred for performance of a second surgery. *See id*. at 322-23. Dr. Kurlanski found the plaintiff to have pain on palpation of the lateral gutter of the right ankle, pain on subtalar and ankle joint inversion, pain on direct pressure of the joint line antereolaterally, and pain on palpation of the calcaneofibular ligament. *See id*. at 322. She found it difficult to assess the anterior drawer sign, as there was pain with range of motion and guarding. *See id*. She assessed him as having capsulitis of the anterior ankle with intraarticular arthritis synovitis, ligament disruption ATFL, and possible calcaneofibular ligament. *See id*. at 323.

On November 29, 2006, Dr. Kurlanski performed arthroscopy and a lateral ankle stabilization, modified Brostrom procedure, of the plaintiff's right ankle. *See id*. at 277. She found significant synovitis and significant scar tissue secondary to his previous surgery. *See id*. at 278. Dr. Kurlanski closely followed the plaintiff's post-operative progress, seeing him on 12 occasions from December 1, 2006, through September 13, 2007. *See id*. at 309-20, 342. On April 3, 2007, she noted that he was about to complete a course of physical therapy, was doing quite well, and had returned to normal shoe gear without any assistive devices or orthotics. *See id*. at 314. On April 25, 2007, she noted that he was complaining of lateral ankle pain after having begun working full-time at Wal-Mart unloading pallets. *See id*. at 313. She wrote a note restricting him from lifting more than 40 pounds, repetitive pulling or twisting, and pulling weight over 1,000 pounds. *See id*. at 312-13. She advised him to take it easy on his ankle to avoid re-injury and to consider alternate work. *See id*. at 313. As of May 22, 2007, she noted that the plaintiff no longer was working at Wal-Mart and was trying to get a new job as a forklift

operator.  *See id.* at 311.  She recommended that he use a Richie brace to provide additional support and prevent an ankle sprain.  *See id.*  As of June 14, 2007, she noted that the plaintiff had found work at a packaging plant and was on his feet for about 10 hours.  *See id.* at 310.  His ankle felt better.  *See id.*  Although he had occasional pain after standing for prolonged periods, he otherwise was doing quite well.  *See id.*  As of July 19, 2007, she noted that the plaintiff continued to have some ankle pain at work but was consistently on his feet and moving large objects.  *See id.* at 309.  The plaintiff that day was fitted with his Richie brace.  *See id.*  In the most recent treatment note of record, dated September 13, 2007, she noted that the plaintiff's ankle anterior laterally continued to be painful.  *See id.* at 342.  She administered a steroid injection into the ankle.  *See id.*

By letter dated July 25, 2007, the plaintiff's attorney asked Dr. Kurlanski to provide an RFC opinion.  *See id.* at 42.  He noted: "Because [the plaintiff] has had a good result following his most recent surgery and because it looks as though he may be able to maintain employment at this point in time, we are asking you to address his condition as of the point in time when he was continuing to struggle with his condition (and ended up having to seek treatment at your office)."  *Id.*  Dr. Kurlanski submitted an opinion dated August 1, 2007, on the subject of whether the plaintiff met the criteria of certain of the commissioner's listings of disabilities ("Listings"), across the top of which was handwritten: "Limitations when I started seeing Chim."  *Id.* at 324.  She also submitted an RFC opinion dated August 31, 2007, in which she stated, in response to the question, "What is the earliest date that the description of symptoms and limitations in this questionnaire applies?": "January 2003 symptoms/pain became worse up until presentation to our office.  Limitations at the time of exam revealed that the patient needed to avoid prolonged standing, walking and twisting up until the time of surgery."  *Id.* at 331.

In her RFC opinion, Dr. Kurlanski ascribed to the plaintiff significantly greater restrictions than those ultimately found by the administrative law judge, including a restriction to sitting no more than 20 minutes at a time and less than two hours in an eight-hour workday, standing no more than 15 to 20 minutes at a time and for about two hours in an eight-hour workday, requiring three to four unscheduled breaks of 20 minutes each during an eight-hour workday, and needing to elevate his leg higher than seat level more than 50 percent of the time during prolonged sitting. *See id*. at 329-30.

Prior to the plaintiff's September 20, 2007, hearing, his counsel stated in a letter dated September 4, 2007, to the administrative law judge:

> Since the time of the surgery, Mr. Meak has had a very good recovery. . . . Towards the end of May, 2007, Mr. Meak was able to find work as a die cutting machine operatorpacker [sic] for RTS. While this job required him to be on his feet quite a bit (50 minutes of each hour), it did not require the heavy lifting. While this job has posed difficulty for Mr. Meak, he does believe he would be capable of a sit down position at this time if he were able to locate such a job.
>
> Mr. Meak is consequently requesting a closed period of disability compensation for the period of December 23, 2002 through the end of May, 2007. Mr. Meak would agree that he is no longer disabled from gainful employment as of June 1, 2007.

*Id*. at 78. At hearing, however, the plaintiff's counsel retracted his request for a closed period of disability, explaining:

> I did an argument letter on September 4th and I was very hopeful that this could be a case where he said the disability ceased. Mr. Meak has been working and he's been working since, well, attempted work beginning in April. His work has been gainful since June 1. The problem is, as you can see from the two notes from Dr. K[u]rl[a]nks[i], if I was to say the disability ceased, where he's now required an additional injection and he's having increasing pain, he's still working through it. It's my fear that I'm not doing him a service if I don't raise it to your attention and say maybe from our standpoint we should be requesting a tr[ia]l work period since the point he's returned to work, instead of saying the disability ceased.

6

*Id*. at 29.  A "trial work period" – a concept pertinent to SSD benefits, *see, e.g., Newton v. Chater*, 92 F.3d 688, 692 n.1 (8th Cir. 1996) – is defined, in relevant part, as "a period during which you may test your ability to work and still be considered disabled. . . .  During this period, you may perform *services* . . . in as many as 9 months, but these months do not have to be consecutive.  We will not consider those services as showing that your disability has ended until you have performed services in at least 9 months[,]" 20 C.F.R. § 404.1592 (emphasis in original).

The administrative law judge stated in his decision, not entirely accurately given the "trial work period" request: "Although the record contains a letter amending the claim to a request for a closed period of disability beginning on December 23, 2002 and ending on May 31, 2007 when the claimant returned to work, he withdrew this request at the hearing and alleged ongoing disability based upon continued complaints of pain."  Record at 14 n.1.  He gave no weight to Dr. Kurlanski's Listings or RFC opinions, reasoning:

> Despite the claimant's significant improvement following the second surgery, Dr. Kurlanski completed a report on the claimant's behalf dated August 31, 2007, setting forth a very different picture of the claimant than that demonstrated by her treatment records . . . .  This report contrasts sharply with her treatment notes and the restrictions she placed upon the claimant in April 2007 of a 1,000 [pound] pushing limit, a forty pound lifting limit and no repetitive twisting.  Dr. Kurlanski also concedes in this report that the claimant is on his feet all day at work (for up to ten hours).

*Id*. at 18; *see also id*. at 19 (rejecting Dr. Kurlanski's August 1, 2007 opinion in part because "her treating notes paint a very different picture than that portrayed in her later report [the RFC opinion] where she limits the claimant to less than two hours of sitting (without narrative explanation) and two hours of standing, as well as ten pounds of lifting"), 21 ("The report of Dr.

7

Kurlanski dated August 1, 2007 is not accorded any weight, given its contradiction to her contemporaneous treatment records and the claimant's activity level.").[5]

Dr. Kurlanski's August 31, 2007, opinion touched on the subject of RFC, a determination reserved to the commissioner with respect to which even opinions of a treating source are accorded no "special significance." *See* 20 C.F.R. § 404.1527(e)(1)-(3). Nonetheless, such an opinion is entitled to consideration based on six enumerated factors: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. *Id*. § 404.1527(d)(2)-(6); Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-5p"), at 124 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d).").

While an administrative law judge is free to decline to adopt an RFC opinion of a treating source, he or she must supply "good reasons" for doing so. *See* 20 C.F.R. § 404.1527(d)(2) (commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion"); *see also, e.g.*, SSR 96-5p at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR

---

[5] The administrative law judge had noted that the plaintiff's "activities of daily living have not been profoundly compromised by his impairment, as evidenced by the ability to perform a warehouse job and working on his feet for ten hours a day." Record at 21.

96-8p"), at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted").[6]

As the plaintiff points out, *see* Statement of Errors at 7, the administrative law judge supplied no "good reasons" for rejecting Dr. Kurlanski's RFC opinion. Instead, his assessment of the weight that it should be accorded was based on a fundamental misconception. Although Dr. Kurlanski described her opinion as encompassing the period leading up to the plaintiff's second surgery, he rejected it on the basis of contradiction with progress notes detailing the plaintiff's condition and activities following that surgery. *See* Record at 18-19, 21. By contrast, as described above, contemporaneous treating notes for the period leading up to the second surgery indicate that the plaintiff suffered severe ongoing pain for which he continually sought treatment from a number of providers. While courts overlook an "arguable deficiency in opinion-writing technique" if not outcome-determinative, *see Bryant ex rel. Bryant v. Apfel*, 141 F.3d 1249, 1252 (8th Cir. 1998), the instant flaw goes beyond such a deficiency; it is instead a failure to properly adjudicate a potentially outcome-determinative issue. Reversal and remand accordingly are warranted.[7]

---

[6] A "treating source" is defined as "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. A podiatrist, such as Dr. Kurlanski, is an "acceptable medical source" for "purposes of establishing impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or the foot and ankle[.]" *Id*. § 404.1513(a)(4). In Maine, a podiatrist may treat both the foot and ankle. *See* 32 M.R.S.A. § 3551(4).

[7] At oral argument, counsel for the commissioner endeavored to salvage the administrative law judge's handling of the Kurlanski RFC opinion by arguing that (i) the opinion did not clearly relate solely to the period prior to surgery, (ii) the opinion in some respects exceeded the scope of Dr. Kurlanski's foot/ankle expertise, (iii) to the extent Dr. Kurlanski gave an opinion as to the plaintiff's condition prior to surgery, it was based only on the two times she saw him prior thereto, based solely on his subjective complaints, and had no retroactive component, and (iv) Dr. Kurlanski did not clearly rise to the level of a treating source for the period of time when the plaintiff asserts she was giving an opinion. The first point is simply wrong: the Kurlanski RFC opinion on its face relates solely to the plaintiff's condition prior to the time of surgery. *See* Record at 331. The remaining points represent "an impermissible attempt to provide a *post hoc* rationale in support of the ALJ's decision, and in any event [are] unpersuasive." *Cagle v. Astrue*, 266 Fed. Appx. 788, 794 (10th Cir. 2008) (citation omitted). Dr. Kurlanski, who performed a second surgery on the plaintiff's ankle and followed him regularly thereafter, without doubt qualifies as a "treating source," regardless of the time period addressed in her opinion. Her opinion purports to address the

### B. Use of Grid

I turn to the plaintiff's second and final point: that the administrative law judge erred in relying solely on the Grid in the absence of any evidence that the plaintiff remained able to perform a wide range of unskilled sedentary work despite his nonexertional impairment of a need to avoid hazards. *See* Statement of Errors at 7-8. He is again correct.

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[8] Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant,

---

plaintiff's symptoms emanating from his foot/ankle condition, the area of her expertise. *See id.* at 327-28, 331. She identifies not only the plaintiff's subjective symptoms but also clinical findings and objective signs in support of her opinion. *See id.* at 327. Finally, she explicitly states that her opinion is retroactive to January 2003. *See id.* at 331. As the plaintiff's counsel noted at oral argument, it is common practice for treating sources to provide so-called retrospective opinions addressing a patient's condition prior to the time the patient first presented to the source for treatment.

[8] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2008) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id.* "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id.*

the commissioner generally may not rely on the Grid to meet his Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id.* "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

In this case, the administrative law judge did cite authority, SSR 83-14, for the proposition that the plaintiff's need to avoid hazards such as uneven surfaces had "little or no effect on the occupational base of unskilled sedentary work[.]" Record at 22. However, as the plaintiff points out, the ruling does not address the extent to which a need to avoid hazards such as uneven surfaces erodes the occupational base for unskilled sedentary work. *See generally* SSR 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991.[9]

At oral argument, counsel for the commissioner contended, in effect, that the proposition is self-evident, supplying a compilation by the Social Security Advisory Service of the 137 unskilled sedentary occupations listed in the Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT"). She posited that it is common knowledge that a number of the listed occupations, including those of surveillance system monitor and charge account clerk,

---

[9] SSR 83-14 addresses a need to avoid hazards only in the context of observing that, while physical limitation of function may be linked with an environmental restriction, for example, a respiratory impairment may diminish exertional capacity as well as restrict a person to types of work not requiring exposure to excessive dust and fumes, in other cases, functional ability may not be impaired by an environmental restriction, for example, a person may be able to do anything so long as he or she is not near dangerous moving machinery or on unprotected elevations. *See* SSR 83-14 at 43. It is a separate question whether a need to avoid hazards has little or no effect on the occupational base for unskilled sedentary work.

11

are performed indoors, an environment compatible with a need to avoid uneven surfaces. As counsel for the plaintiff rejoined, this argument makes his point. Short of analyzing which percentage of the 137 jobs is performed indoors, and taking it on faith that none of the indoor jobs presents uneven walking surfaces, an assumption that I am unprepared to make, one cannot tell whether the stated restriction has only a negligible effect on the occupational base for unskilled sedentary work absent vocational testimony.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of November, 2008.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge